IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DOMETIC CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. |
| | ) | |
| GULF STREAM COACH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Dometic Corporation ("Plaintiff" or "Dometic"), by counsel, brings this action for recovery of damages, service charge/interest, and costs of collection, against Defendant Gulf Stream Coach, Inc. ("Defendant" or "Gulf Stream"), and states as follows:

## Parties

1.    Dometic is a foreign for-profit corporation, registered to do business in Indiana. Dometic is a Delaware corporation with its principal place of business in Rosemont, Illinois, and owns and operates manufacturing and warehousing facilities throughout the United States as well as in Mexico. Dometic is a citizen of Delaware and Illinois.

2.    Gulf Stream is an Indiana for-profit corporation. Gulf Stream is an Indiana corporation with its principal place of business in Nappanee, Indiana, and is therefore a citizen of Indiana.

1

**Jurisdiction and Venue**

3.     This Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, and Dometic is a citizen of Delaware and Illinois and Gulf Stream is a citizen of Indiana, thus there is complete diversity of citizenship.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claims occurred in or were directed towards the Northern District of Indiana.

5.     An actual controversy of a justiciable nature exists between Dometic and Gulf Stream regarding Gulf Stream's failure to pay in full contracts dating back to 2019, as discussed below, and the controversy can be determined by judgment of this Court without further suit.

**Background of the Relationship**

6.     Dometic primarily manufactures goods for the recreational vehicle ("RV") industry. Dometic also manufactures marine industry and mobile power products.

7.     Gulf Stream is an RV manufacturer with over twenty-two (22) brands and over one hundred forty (140) different models and throughout its history has produced almost three hundred thousand (300,000) RVs.

8.     Dometic sells manufactured goods to Gulf Stream for use in the RVs that Gulf Stream sells.

9.     During the relevant period, Gulf Stream ordered goods for which it should have paid Dometic in excess of $31 million, after applicable credits. But Gulf Stream has failed to pay the amounts owed and currently owes Dometic in excess of $3 million.

10.     Dometic's invoices (discussed further below) provided that all sales are subject to Dometic's *Standard Terms and Conditions of Sale (B2B)*, published on Dometic's website (the "Published Terms and Conditions"). A true and accurate copy of the Published Terms and Conditions is attached here as **Exhibit 1** and is incorporated herein by reference. The Published Terms and Conditions are also available at https://www.dometic.com/en-us/outdoor/terms-of-sale-b2b  last viewed May 14, 2024).

11.     The Published Terms and Conditions during the entire relevant period provided:

> Buyer shall purchase the Goods from Seller at the **price**[s] (the "Price[s]") **set forth in Seller's published price list in force as of Seller's shipping date**. If the Price[s] should be increased by Seller before delivery of the Goods to a carrier for shipment to Buyer, then these Terms shall be construed as if the increased price[s] were originally inserted herein, and Buyer shall be billed by Seller on the basis of such increased price[s].

Exhibit 1, p. 2 (emphasis added, brackets in original).

> Buyer shall pay a **service charge on all late payments at the lesser of the rate of 1.5% per month** or the highest rate permissible under applicable law, calculated daily and compounded monthly. Buyer shall reimburse Seller for all such service charges as well as **for all costs and expenses incurred by Seller in collecting** any late payments invoiced by Seller, including, without limitation, **Seller's reasonable attorneys' fees** (in jurisdictions where law

> mandates a stated rate of attorney's fees, same shall be 30% of the outstanding balance, or less if fee actually charged is less). In addition to all other remedies available under these Terms or at law (which Seller does not waive by the exercise of any rights hereunder), Seller shall be entitled to suspend the delivery of any Goods if Buyer fails to pay any amounts when due hereunder.

Exhibit 1, p. 3 (emphasis added).

12.     Gulf Stream further executed *Seller's OEM Terms and Conditions for 2021* ("2021 OEM Agreement") on February 23, 2021, in order to participate in Dometic's rebate program for 2021. A true and accurate copy of the 2021 OEM Agreement is attached here as **Exhibit 2** and is incorporated herein by reference.

13.     The 2021 OEM Agreement incorporates the Published Terms and Conditions.

14.     The 2021 OEM Agreement and Published Terms and Conditions each specifically provide that all past due amounts accrue a service charge of 1.5% per month and that Gulf Stream would be responsible for cost of collection, including reasonable attorney's fees.

15.     Dometic periodically updated the price of its goods. Customers, including Gulf Stream, are notified in advance of any price changes, typically through an email notification a month in advance and then a follow-up email in the weeks prior to the price change.

16.     The order and fulfillment process, during the relevant period and consistent with prior practice, provided that:

      a.  Gulf Stream would issue a Purchase Order ("PO") to Dometic identifying goods Gulf Stream desired to purchase;

b.  Dometic would return to Gulf Stream a Sales Order Confirmation ("Confirmation") identifying Dometic's price for the goods and the expected ship date of the itemized Dometic goods; and

c.  Dometic would, contemporaneously with shipment of the goods, issue an Invoice identifying Dometic's price for the goods.

**Exhibits 3-5** contain a sample PO (Ex. 3), Confirmation (Ex. 4), and Invoice (Ex. 5) exchanged by and between Dometic and Gulf Stream and are incorporated herein by reference. Dometic sent its Confirmations and Invoices through Microsoft Dynamics 365 ("D365"), a combined customer relationship management (CRM) and enterprise resource planning (ERP) system. D365 transmits the materials to a customer provided email, in this case, to gstowap@gulfstreamcoach.com.

17.  Gulf Stream paid Dometic by periodically sending checks to Dometic's bank lockbox. Typically, a check would relate to multiple invoices and Gulf Stream would provide a "remittance advice" that would identify the invoices which Gulf Stream intended the payment to apply to.

18.  Dometic's bank electronically transmitted to Dometic the amount of the payment and the Gulf Stram-identified invoices. A Dometic cash applications clerk downloaded the information into Dometic's accounts receivable system.

19.  Dometic shipped Gulf Stream goods with thousands of invoices over the years. In addition to a high volume of transactions, the business relationship included:  Dometic granting Gulf Stream volume discounts for orders; occasional modifications to order shipments due to either Gulf Stream requesting split

5

shipment of goods or partial shipment of goods due to supply chain issues; and credits issued to Gulf Steam for warranty work.

20.     Consequently, Gulf Stream's account with Dometic was rarely "zeroed out," instead a balance was generally carried and the amounts due would need to be trued up.

21.     Dometic sent Gulf Stream monthly statements of balance to confirm the amounts Dometic contended were due from Gulf Stream. The monthly statements were sent via D365 to [gstowap@gulfstreamcoach.com](mailto:gstowap@gulfstreamcoach.com).

22.     Gulf Stream did not timely object or otherwise contest the amounts owed as set forth in each Monthly Statement.

23.     In 2022, Dometic recognized Gulf Stream's balance was trending larger over time, rather than normal up and down fluctuations.

24.     Gulf Stream has failed to pay the amounts owed to Dometic for the goods Gulf Stream purchased pursuant to in excess of 2,000 Invoices. **Exhibit 6** identifies each Invoice for which Gulf Stream has an unpaid balance owed to Dometic, including the amount of the Invoice and the balance owed for each Invoice.

25.     A Confirmation and Invoice exists for each of the line numbers identified within Exhibit 6 indicating an amount due from Gulf Stream, and each of the foregoing have previously been provided to Gulf Stream.

**Dometic's investigation revealed Gulf Stream intentionally
<u>short-paid the invoices</u>**

26.    Dometic contacted Gulf Stream regarding the increasing balance and was initially told that the discrepancy related to freight charges.

27.    During the relevant period of time, Gulf Stream was responsible for the cost of freight. Dometic discovered that Gulf Stream had been short-paying Dometic's invoices by failing to pay the amount of the freight charges. **Exhibit 6, lines 2-599** lists the invoice that were short-paid due to freight.

28.    Gulf Stream owes Dometic for the freight charges, but the freight charges did not alone account for the upward trending balance of Gulf Stream's account.

29.    Dometic continued to investigate the cause of the upward trending balance.

30.    Dometic raised the issue of the upward trending balance to Gulf Stream, which responded that it would look into the issue.

31.    Over a period of months, Gulf Stream professed to be looking into the issue, and Dometic even sent, at Gulf Stream's request, the thousands of invoices at issue on or about January 4, 2023.

32.    On information and belief, Gulf Stream was not communicating with Dometic in good faith, but instead Gulf Stream had intentionally short-paid its invoices and professed ignorance on the issue of the upward trending balance as a further stalling technique. Gulf Stream never provided a substantive explanation as

to why it did not pay the invoiced amounts for the goods. Nor did Gulf Stream ever contest the amounts identified as owed in the monthly statements.

33.    Dometic's investigation discovered that some, but not all, of the Gulf Stream POs did not reflect Dometic's current price list for every item on the PO. In some instances within the same PO, Gulf Stream ordered some Dometic goods using obsolete prices, yet for other items Gulf Stream ordered using the updated (current) Dometic prices. Gulf Stream's selective underpayment suggests a conscious attempt to pay less than the amount owed rather than a good-faith error in the ordering process. **Exhibit 6,** lines 600-1626,  list the invoices that were short-paid due to Gulf Stream's use of obsolete pricing.

34.    Nevertheless, each Confirmation and Invoice (issued by Dometic in response to each PO) contained the price provided in the applicable posted price list.

35.    Gulf Stream has repeatedly failed to pay the required sales price (as set forth in the applicable price list, Confirmation, and Invoice), while keeping the goods shipped. Gulf Stream never returned the shipped goods despite knowing of its obligations.

36.    Gulf Stream was also responsible for paying tariffs charged for the goods Dometic sold to Gulf Steam.

37.    The tariff is charged as a percentage of the invoice price of the goods.

38.    Gulf Stream not only short-paid invoices by unilaterally reducing the price of the goods, but also short-paid invoices by unilaterally reducing the tariff reimbursement based on the reduced "Gulf Stream determined price" of the goods.

39.     Separate from the short-payments due to obsolete pricing, Gulf Stream has without explanation or right, paid only ninety percent (90%) of certain Invoices. **Exhibit 6,** lines 1627-1636, list the invoices that were short-paid due to 10% reduction.

40.     Further, Gulf Steam has without explanation or right, applied a "chargeback" to certain Invoices, and thereby paid less than the amount owed. **Exhibit 6,** lines 1637-1650, list the invoices that were short-paid due to chargebacks.

41.     Gulf Stream has further refused to pay, or paid only a portion of, certain Invoices. Dometic has not been able to divine any rationale (wrongful or otherwise) for Gulf Stream's short-payment and Gulf Stream has not offered any basis.  **Exhibit 6,** lines 1651-1680**,** list the invoices that were short-paid without explanation.

42.     Gulf Stream has further refused to pay, or paid only a portion of, certain Invoices that were subject to blanket purchase orders. **Exhibit 6,** lines 1681-2014, list the invoices that were short-paid following orders on blanket purchase orders.

43.     Gulf Stream is also entitled to certain credits as identified in **Exhibit 6**, lines 2015-2499.

## COUNT 1:  BREACH OF CONTRACT

44.     Dometic incorporates the preceding paragraphs as if fully set forth herein.

45.     Dometic and Gulf Stream entered into a series of contracts as set forth above.

46.     Gulf Stream is in default and breach of its contracts because it failed to pay the invoiced amounts, in excess of $3 million.

47.     All conditions precedent to Dometic's enforcement of the contracts has been performed, has occurred or has been excused.

48.     As a direct and proximate result of Gulf Stream breaches of the contracts, Dometic has been damaged and Dometic has the right to recover damages from Gulf Stream.

49.     Dometic has incurred costs, expenses and attorneys' fees in its effort to obtain the amounts due from Gulf Stream to Dometic, and additional attorneys' fees and costs will be incurred prior to and subsequent to judgment in this action.

50.     As a result of Gulf Stream's breaches, Dometic is entitled to collect from Gulf Stream the amounts owed, the service charge/interest, reasonable attorneys' fees, the costs of this action, and any other consequential damages suffered by Dometic due to Gulf Stream's conduct.

## COUNT 2: BREACH OF UCC SALE OF GOODS CONTRACT

51.    Dometic incorporates the preceding paragraphs as if fully set forth herein.

52.    The equipment produced by Dometic and ordered by Gulf Stream pursuant to the contracts is a "good" pursuant to the Uniform Commercial Code, more specifically 810 Ill. Comp. Stat. Ann. 5/2-105.

53.    The contracts are contracts for the sale of goods pursuant to 810 Ill. Comp. Stat. Ann. 5/2-106.

54.    Dometic performed the contracts and Gulf Stream accepted the equipment consistent with 810 Ill. Comp. Stat. Ann. 5/2-606 and did not reject the equipment and, thus, payment for the equipment was due.

55.    Gulf Stream has not paid Dometic for the equipment and, thus, Gulf Stream has breached its contract with Dometic.

56.    Gulf Stream did not act in good faith in refusing to pay the amounts owed.

57.    Pursuant to 810 Ill. Comp. Stat. Ann. 5/2-703, among other things, Dometic has a claim against Gulf Stream to recover damages.

58.    Given the foregoing, 810 Ill. Comp. Stat. Ann. 5/2-709 and -710 is applicable and Dometic's damages, recoverable from the Gulf Stream, include the agreed to price of the equipment and any incidental or consequential damages incurred by Dometic due to Gulf Stream's acts or failures to act.

11

## COUNT 3:  CLAIMS IN THE ALTERNATIVE
## UNJUST ENRICHMENT; ACCOUNT STATED

59.    Dometic incorporates the preceding paragraphs as if fully set forth herein.

60.    Gulf Stream has received benefits from Dometic and such benefits were not conveyed by Dometic to Gulf Stream gratuitously.

61.    The benefits conferred by Dometic to Gulf Stream were measurable and significant, which was previously affirmed by Gulf Stream.

62.    Gulf Stream accepted the benefits from Dometic without objection; however, Gulf Stream has not reciprocated by providing like value.

63.    Gulf Stream has been unjustly enriched at the expense of Dometic and Dometic is entitled to restitution for the same.

64.    Gulf Stream received each Confirmation, Invoice, and Monthly Statement, had a reasonable period to object to each and their contents, but did not object upon receipt or thereafter.

65.    As a result of Gulf Stream's failure to contest the amount stated in the Monthly Statements or otherwise notify Dometic's receivables department that it disputed the amount due, the amount owed is deemed stated and established, and Gulf Stream is obligated to Dometic in this amount.

## COUNT 4 – CLAIM IN THE ALTERNATIVE; PREJUDGMENT INTEREST

66.     Dometic incorporates the preceding paragraphs as if fully set forth herein.

67.     If this Court does not enforce the service interest rate per the terms of the Published Terms and Conditions, prejudgment interest shall be allowed on the amounts unpaid and overdue pursuant to the Invoices, which should accrue from the date of the Invoice.

68.     Alternatively, if this Court does not enforce the service charge/interest rate, the damages are complete and ascertainable as of a particular time and in accordance with fixed rules of evidence and known standards of value, and interest should be assessed against Gulf Stream in addition to any judgment entered against it and in Dometic's favor.


## REQUESTED RELIEF

THEREFORE, Dometic requests that the Court:

A.     Enter judgment in favor of Dometic and against Gulf Stream for all amounts due and unpaid, in an amount to be determined at trial;

B.     Enter judgment for the service charge/interest for the unpaid amounts owed by Gulf Stream from the date due, pursuant (i) to the Published Terms and Conditions, or alternately (ii) for the statutory rate of interest.

13

C.      Enter judgment in favor of Dometic and against Gulf Stream for
        the incidental and or consequential damages incurred by
        Dometic due to Gulf Stream's failure to pay amounts owed;

D.      Enter judgment in favor of Dometic and against Gulf Stream for
        the costs and expenses of collection and reasonable attorneys'
        fees;

E.      Enter judgment for post-judgment interest; and

F.      All other just and proper relief.

/s/ Steven E. Runyan
Steven E. Runyan, Attorney No. 25771-29
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
Tel: 317-692-9000
Email:   srunyan@kgrlaw.com

ATTORNEYS FOR DOMETIC CORPORATION
