USDC IN/ND case 3:24-cv-00537-DRL-AZ      document 1-1      filed 07/02/24

EXHIBIT
1

# STANDARD TERMS AND CONDITIONS OF SALE (B2B)

STANDARD TERMS AND CONDITIONS OF SALE

1. APPLICABILITY

(a) These Standard Terms and Conditions of Sale (these "Terms") are the only terms which govern the sale of the goods ("Goods") or services ("Services")  by Dometic Corporation or any Dometic Corporation subsidiary (respectively, a "Seller") to any customer ("Buyer"). Notwithstanding anything herein to the contrary, if a separate written contract signed by both parties is in existence covering the sale of the Goods or Services covered hereby, the terms and conditions of said contract shall prevail to the extent they are inconsistent with these Terms.

(b) Any quotation, order acknowledgement or the like issued by Seller (the "Sales Confirmation" and these Terms (collectively, this "Agreement") comprise the entire agreement between the parties, and supersede all prior or contemporaneous understandings, agreements, negotiations, representations and warranties, and communications, both written and oral. These Terms prevail over any of Buyer's general terms and conditions of purchase regardless whether or when Buyer has submitted its purchase order or such terms. Fulfillment of Buyer's order does not constitute acceptance of any of Buyer's terms and conditions and does not serve to modify or amend these Terms.

2. DELIVERY

(a) The Goods will be delivered within a reasonable time after the receipt of Buyer's purchase order, subject to availability of finished Goods. Seller shall not be liable for any delays, loss or damage in transit.

(b) Unless otherwise agreed in writing by the parties, Seller shall deliver Goods FOB to Seller's dock (the "Delivery Point") using Seller's standard methods for packaging and shipping such Goods and, unless Seller has made other arrangements with Buyer, Buyer shall be responsible for all loading costs and provide equipment and labor reasonably suited for receipt of the Goods at the Delivery Point.

(c) Seller may, in its sole discretion, without liability or penalty, make partial shipments of Goods to Buyer. Each shipment will constitute a separate sale, and Buyer shall pay for the units shipped whether such shipment is in whole or partial fulfillment of Buyer's purchase order.

(d) If for any reason Buyer fails to accept delivery of Goods on the date fixed pursuant to Seller's notice that the Goods have been delivered at the Delivery Point, or if Seller is unable to deliver the Goods at the Delivery Point on such date because Buyer has not provided appropriate instructions, documents, licenses or authorizations: (i) risk of loss to the Goods shall pass to Buyer; (ii) the Goods shall be deemed to have been delivered; and (iii) Seller, at its option, may store the Goods until Buyer picks them up, whereupon Buyer shall be liable for all related resulting costs and expenses (including, without limitation, storage and insurance) incurred or suffered by Seller.

3. DELIVERY AND NON-DELIVERY

(a) The quantity of any installment of Goods as recorded by Seller on dispatch from Seller's place of business is conclusive evidence of the quantity received by Buyer on delivery unless Buyer can provide conclusive evidence proving the contrary.

(b) The Seller shall not be liable for any claimed non-delivery of Goods (even if caused by Seller's negligence) unless Buyer gives written notice to Seller of the non-delivery within twenty (20) days of the date when the Goods would in the ordinary course of events have been received.

(c) Any liability of Seller for non-delivery of the Goods shall be limited to replacing the Goods within a reasonable time or adjusting the invoice respecting such Goods to reflect the actual quantity delivered.

### 4. SHIPPING TERMS

Delivery of Goods shall be made FOB Seller's dock unless Seller shall have made separate FOB terms in writing specifically addressed to Buyer.

### 5. TITLE AND RISK OF LOSS

Title to, and risk of loss of, Goods passes to Buyer upon delivery of the Goods at the Delivery Point.

### 6. AMENDMENT AND MODIFICATION

These Terms may only be amended or modified in a writing which specifically states that it amends these Terms and is signed by an authorized representative of each party.

### 7. INSPECTION AND REJECTION OF NONCONFORMING GOODS

(a) Buyer shall inspect the Goods within ten (10) days of receipt ("Inspection Period"). Buyer will be deemed to have accepted the Goods unless it notifies Seller in writing of any Nonconforming Goods during the Inspection Period and furnishes such written evidence or other documentation as reasonably required by Seller. "Nonconforming Goods" means only the following: (i) product shipped is different than identified in Buyer's purchase order; or (ii) product's label or packaging incorrectly identifies its contents.

(b) If Buyer timely notifies Seller of any Nonconforming Goods, Seller shall, in its sole discretion, (i) replace such Nonconforming Goods with conforming Goods, or (ii) credit or refund the Price for such Nonconforming Goods, together with any reasonable shipping and handling expenses incurred by Buyer in connection therewith. With respect to Nonconforming Goods only, once Seller issues a Return Goods Authorization("RGA") Buyer shall ship, at Seller's its expense and risk of loss, the Nonconforming Goods to Seller's facility located as designated by Seller. If Seller exercises its option to replace Nonconforming Goods, Seller shall, after receiving Buyer's shipment of Nonconforming Goods, ship to Buyer at Seller's expense, the replaced Goods to the Delivery Point. Absent an RGA being issued by Seller, any and all returns to Seller shall be shipped at Buyer's expense and risk of loss.

(c) Buyer acknowledges and agrees that the remedies set forth in Section 7(b) are Buyer's exclusive remedies for the delivery of Nonconforming Goods. Except as provided under Section 7(b), all sales of Goods to Buyer are made on a one-way basis and Buyer has no right to return Goods purchased under this Agreement to Seller.

### 8. PRICE

(a) Buyer shall purchase the Goods from Seller at the price[s] (the "Price[s]") set forth in Seller's published price list in force as of Seller's shipping date. If the Price[s] should be increased by Seller before delivery of the Goods to a carrier for shipment to Buyer, then these Terms shall be construed as if the increased price[s] were originally inserted herein, and Buyer shall be billed by Seller on the basis of such increased price[s].

(b) All Prices are exclusive of all sales, use and excise taxes, and any other similar taxes, tariffs, duties and charges of any kind imposed by any Governmental Authority on any amounts payable by Buyer. Buyer shall be responsible for all such charges, costs tariffs, duties and taxes; provided, that, Buyer shall not be responsible for any taxes imposed on, or with respect to, Seller's income, revenues, gross receipts, personnel or real or personal property or other assets.

(c) Tariffs and duties (and product classifications underlying the same) may be subject to change at any time by any Governmental Authority. Increases in such tariffs and duties directly affecting the cost or price of Seller's Goods are beyond Seller's control. Whether or not Seller has previously charged Buyer for any imposed duties or tariffs, Seller reserves the right, without prior notice, to pass through to Buyer any and all new or incremental tariff or duty surcharges imposed by any Governmental Authority on any and all Goods sold by Seller.

9. PAYMENT TERMS/INVOICING

(a) Buyer shall pay all invoiced amounts due to Seller within the payment terms noted on Seller's invoice, and shall remit to Seller's "Remit To" address (or to Seller's designated bank account) in US dollars. Buyer acknowledges that Dometic Corporation may provide an invoicing service not only for its own product sales but also for sales by some or all of its wholly owned subsidiary affiliates; each of these Seller entities may publish its own applicable product warranties, subject to Section 10 below.

(b) Buyer shall pay a service charge on all late payments at the lesser of the rate of 1.5% per month or the highest rate permissible under applicable law, calculated daily and compounded monthly. Buyer shall reimburse Seller for all such service charges as well as for all costs and expenses incurred by Seller in collecting any late payments invoiced by Seller, including, without limitation, Seller's reasonable attorneys' fees (in jurisdictions where law mandates a stated rate of attorney's fees, same shall be 30% of the outstanding balance, or less if fee actually charged is less). In addition to all other remedies available under these Terms or at law (which Seller does not waive by the exercise of any rights hereunder), Seller shall be entitled to suspend the delivery of any Goods if Buyer fails to pay any amounts when due hereunder.

(c) Buyer may not withhold payment of any amounts due and payable as invoiced by Seller by reason of any set-off of any claim or dispute with Seller.

(d) For subscription products or subscription Services, once Buyer purchases such Services and pays, all such payments shall be considered final. Buyer shall not be entitled to a refund of any portion of any subscription payments already made. Buyer may cancel the subscription at any time before or after renewal thereof, and if after renewal will have access to the subscription product until the end of the period the Buyer has paid for.

10. LIMITED WARRANTY

(a) Seller warrants to Buyer from the date of shipment of the Goods that such Goods will be free from defects in material and workmanship at time of Seller shipment ("Limited Warranty"). The period for asserting a claim under such Limited Warranty shall be FROM THE LATER OF THE DATE OF SELLER'S SHIPMENT OR THE WARRANTY BEGINNING DATE SET FORTH IN THE SELLER'S PRODUCT-SPECIFIC WARRANTY STATEMENT, IF ANY ("Warranty Period").

(b) EXCEPT FOR THE WARRANTY SET FORTH IN SECTION 10(a), SELLER MAKES NO WARRANTY WHATSOEVER WITH RESPECT TO THE GOODS, INCLUDING ANY (A) EXPRESS WARRANTY, (B) IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, INCLUDING IMPLIED BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE.

(c) Products manufactured by a third party ("Third Party Product") may constitute, contain, be contained in, incorporated into, attached to or packaged together with, the Goods. Third Party Products (for example, without limitation, batteries) are not covered by the warranty made by Seller in Section 10(a) or otherwise. For the avoidance of doubt, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO ANY THIRD PARTY PRODUCT, INCLUDING ANY (A) EXPRESS WARRANTY, (B) WARRANTY AGAINST INFRINGEMENT OF INTELLECTUAL PROPERTY RIGHTS OF A THIRD PARTY: (B) IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, INCLUDING IMPLIED BY LAW, COURSE OF DEALING, COURSE OF PERFORMANCE, USAGE OF TRADE OR OTHERWISE.

(d) The Seller shall not be liable for a breach of the warranty set forth in Section 10(a) unless: (i) Buyer gives written notice of the defect, reasonably described, to Seller within the time limit specified in the Seller's product-specific warranty statement, if any; (ii) Seller is given a reasonable opportunity after receiving the notice to examine such Goods and Buyer (if requested to do so by Seller) returns such Goods to Seller's place of business at Seller's cost for the examination to take place there; and (iii) Seller reasonably verifies Buyer's claim that the Goods are defective.

(e) The Seller shall not be liable for a breach of the warranty set forth in Section 10(a) if: (i) Buyer makes any further use of such Goods after giving such notice; (ii) the defect arises because Buyer failed to follow Seller's oral or written instructions as to the storage, installation, commissioning, use or maintenance of the Goods; or (iii) Buyer alters or repairs such Goods without the prior written consent of Seller.

(f) Subject to Section 10(d) and Section 10(e) above, with respect to any such Goods during the Warranty Period, Seller shall, in its sole discretion, either: (i) repair or replace such Goods (or the defective part) or (ii) credit or refund the price of such Goods at the pro rata contract rate provided that, if Seller so requests, Buyer shall, at Seller's expense, return such Goods to Seller. Buyer must utilize Seller's RGA process in order to return to Seller any defective Goods under a valid Limited Warranty claim.

(g) THE REMEDIES SET FORTH IN SECTION 10(f) SHALL BE THE BUYER'S SOLE AND EXCLUSIVE REMEDY AND SELLER'S ENTIRE LIABILITY FOR ANY BREACH OF THE LIMITED WARRANTY SET FORTH IN SECTION 10(a).

## 11. LIMITATION OF LIABILITY

(a) IN NO EVENT SHALL SELLER BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY, OR PUNITIVE DAMAGES, LOST PROFITS OR REVENUES OR DIMINUTION IN VALUE, ARISING OUT OF OR RELATING TO ANY BREACH OF THESE TERMS, WHETHER OR NOT THE POSSIBILITY OF SUCH DAMAGES HAS BEEN DISCLOSED IN ADVANCE BY BUYER OR COULD HAVE BEEN REASONABLY FORESEEN BY BUYER, REGARDLESS OF THE LEGAL OR EQUITABLE THEORY (CONTRACT, TORT OR OTHERWISE) UPON WHICH THE CLAIM IS BASED, AND NOTWITHSTANDING THE FAILURE OF ANY AGREED OR OTHER REMEDY OF ITS ESSENTIAL PURPOSE.

(b) IN NO EVENT SHALL SELLER'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER ARISING OUT OF OR RELATED TO BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, EXCEED THE TOTAL OF THE AMOUNTS PAID TO SELLER FOR THE AFFECTED GOODS SOLD BY SELLER TO BUYER.

(c) The limitation of liability set forth in Section 11(b) above shall not apply to (i) liability resulting from Seller's gross negligence or willful misconduct and (ii) death or bodily injury resulting from Seller's acts or omissions.

## 12. COMPLIANCE WITH LAW

Buyer shall comply with all applicable laws, regulations and ordinances. Buyer shall maintain in effect all the licenses, permissions, authorizations, consents and permits that it needs to carry out its obligations under this Agreement. Buyer shall comply with all export and import laws of all countries involved in the sale of the Goods under this Agreement or any resale of the Goods by Buyer. Buyer assumes all

OUTDOOR    HOME    PROFESSIONAL           Buy Now Pay Later with Klarna                    Dometic for Business    |    US

DOMETIC    Coolers    Drinkware    Mobile Power    Camping    RV & Van    Marine    Activities    Support    Search...

Governmental Entity imposing economic sanctions and trade embargoes ("Economic Sanctions Laws") against designated countries ("Embargoed Countries"), entities, and persons (collectively, "Embargoed Targets"). Buyer represents that it is not an Embargoed Target or otherwise subject to any Economic Sanctions Law.

Buyer shall comply with all Economic Sanctions Laws. Without limiting the generality of the foregoing, Buyer shall not (a) directly or indirectly export, re-export, transship, or otherwise deliver the Goods, or any portion of the Goods, to an Embargoed Target or (b) broker, finance, or otherwise facilitate any transaction in violation of any Economic Sanctions Law.

In the event that Seller determines that Buyer is in violation of Economic Sanctions Laws or is selling Seller's Goods to Embargoed Countries or Embargoed Targets, Seller shall immediately cancel all pending orders and shipments, and shall hold Buyer liable for all resulting costs, expenses and damages incurred by Seller, including its reasonable attorneys' fees.

## 13. TERMINATION

In addition to any remedies that may be provided under these Terms, Seller may terminate this Agreement with immediate effect upon written notice to Buyer, if Buyer: (i) fails to pay any amount when due under this Agreement; (ii) has not otherwise performed or complied with any of these Terms, in whole or in part; or (iii) becomes insolvent, files a petition for bankruptcy or commences or has commenced against it proceedings relating to bankruptcy, receivership, reorganization or assignment for the benefit of creditors.

## 14. WAIVER

No waiver by Seller of any of the provisions of this Agreement is effective unless explicitly set forth in writing and signed by Seller. No failure to exercise, or delay in exercising, any rights, remedy, power or privilege arising from this Agreement operates or may be construed as a waiver thereof. No single or partial exercise of any right, remedy, power or privilege hereunder precludes any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

USDC IN/ND case 3:24-cv-00537-DRL-AZ    document 1-1    filed 07/02/24    page 5 of 6

### 15. CONFIDENTIAL INFORMATION

All non-public, confidential or proprietary information of Seller, including, but not limited to, specifications, samples, patterns, designs, plans, drawings, documents, data, business operations, customer lists, pricing, discounts or rebates, disclosed by Seller to Buyer, whether disclosed orally or disclosed or accessed in written, electronic or other form or media, and whether or not marked, designated or otherwise identified as "confidential," in connection with this Agreement is confidential, solely for the use of performing this Agreement and may not be disclosed or copied unless authorized in advance by Seller in writing. Upon Seller's request, Buyer shall promptly return all documents and other materials received from Seller. Seller shall be entitled to injunctive relief for any violation of this Section. This Section does not apply to information that is: (a) in the public domain; (b) known to Buyer at the time of disclosure; or (c) rightfully obtained by Seller on a non-confidential basis from a third party.

### 16. FORCE MAJEURE

The Seller shall not be liable or responsible to Buyer, nor be deemed to have defaulted or breached this Agreement, for any failure or delay in fulfilling or performing any term of this Agreement when and to the extent such failure or delay is caused by or results from acts or circumstances beyond the reasonable control of Seller including, without limitation, acts of God, flood, fire, earthquake, explosion, governmental actions or orders, war, invasion or hostilities (whether war is declared or not), terrorist threats or acts, riot, or other civil unrest, national emergency, revolution, insurrection, epidemic, pandemic, lock-outs, strikes or other labor disputes (whether or not relating to either party's workforce), or restraints or delays affecting carriers or inability or delay in obtaining supplies of adequate or suitable materials, materials or telecommunication breakdown or power outage.

### 17. ASSIGNMENT

Buyer shall not assign any of its rights or delegate any of its obligations under this Agreement without the prior written consent of Seller. Any purported assignment or delegation in violation of this Section is null and void. No permitted assignment or delegation shall relieve Buyer of any of its obligations hereunder.

### 18. NO THIRD-PARTY BENEFICIARIES

This Agreement is for the sole benefit of the parties here to and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of these Terms.

### 19. GOVERNING LAW

All matters arising out of or relating to this Agreement is governed by and construed in accordance with the internal laws of the State of Illinois without giving effect to any choice or conflict of law provision or rule (whether of such State that would cause the application of the laws of any jurisdiction other than those of the State Illinois. THE UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS (CISG) IS DISCLAIMED.

### 20. SUBMISSION TO JURISDICTION

Any legal suit, action or proceeding arising out of or relating to this Agreement shall be instituted in the federal courts of the United States of America or the courts of the State of Illinois, in each case located in Cook County Illinois (including Chicago), and each party irrevocably submits to the jurisdiction of such courts in any such suit, action or proceeding.

### 21. SEVERABILITY

If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

✓ Ready to ship within 1-2 days

✓ Buy Now Pay Later with Klarna

✓ 30-day return policy

**Stay updated! Sign up for news, exclusive offers, events and more.**

Email*

Areas of interest

☐ I consent to receiving e-mails from Dometic.

Subscribe

**Support**
- Support & Service
- Find a Dealer
- Product Registration Form
- Return Form
- Warranty
- Contact Us
- Privacy Request Form

**Discover**
- About Us
- Ambassadors
- Stories
- News
- Shows & Exhibitions

**Corporate Info**
- Dometic Group
- Sustainability
- PR & Media
- Investor Relations
- Corporate Governance
- Career at Dometic
- Supplier Information

**Business Area**
- Partner Login
- Dealer Application Form

© Dometic Group AB (PUBL) | Privacy Policy | Cookie Notice | Cookie Preferences | Accessibility | CA Disclosure Statement | Purchase Order Terms (B2B) | Terms of Sale (B2B) | Terms & Conditions (Consumer)