UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DOMETIC CORPORATION,

Plaintiff,

v.

GULF STREAM COACH, INC.,

Defendant.

CAUSE NO. 3:24cv537 DRL-AZ

OPINION AND ORDER

When a business relationship soured, Dometic Corporation sued Gulf Stream Coach, Inc. for breach of contract and other theories of recovery, including unjust enrichment. After the pleadings closed, Gulf Stream moved for partial judgment on the pleadings on the contract and unjust enrichment claims under Rule 12(c). The court denies the motion.

BACKGROUND

The amended complaint offers these facts, taking its well-pleaded allegations as true and drawing inferences in the light most favorable to Dometic, as the court must for today's motion. *Federated Mut. Ins. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Dometic manufactures products for the recreational vehicle industry [24 ¶ 6]. Gulf Stream manufactures recreational vehicles [*id.* ¶ 7]. From 2018 to 2023, Gulf Stream purchased thousands of such goods from Dometic [*id.* ¶ 8; 24-6].

During this period, the parties generally transacted in a consistent manner [24 ¶ 20]. Gulf Stream submitted a purchase order to Dometic, specifying the desired products, quantity, and price [*id.*; 24-3]. Dometic responded by sending Gulf Stream a sales order confirmation [24 ¶ 20]. The confirmation identified the purchase order and listed the expected shipping date, the unit

price for the goods, additional surcharges, and the total cost for the deal [*id.*; 24-4]. Once the goods were shipped, Dometic sent Gulf Stream an invoice that mirrored information in the confirmation, except that it specifically itemized the cost of delivery [24 ¶ 20; 24-5].

The parties debate the terms of these transactions, particularly price. Dometic's confirmations contained this clause:

> All sales of items shown hereon are made conditional upon buyer's assent to the Dometic prices set forth hereon, and are subject to (1) the terms as reflected hereon, and (2) Dometic's "terms of sale (B2B)" . . . . Any different or additional prices or terms set forth by buyer on buyer's purchase order, published on buyer's website or contained on any writing by buyer (before or after the date of this confirmation) are objected to and rejected. . . . If these Dometic prices or terms are not acceptable, buyer must reject and refuse (or immediately return at buyer's cost) all shipments of the items reflected on this confirmation from Dometic, or buyer's assent hereto shall be presumed and established for all purposes.

[24-4 (capitalization altered)]. Dometic's invoices echoed this same proviso [24 ¶ 12; 24-5]. As relevant today, Dometic's terms and conditions for business-to-business transactions specified that the "[b]uyer shall purchase the Goods from [Dometic] at the price[s] [] set forth in [Dometic]'s published price list in force as of [Dometic]'s shipping date" [24-1 ¶ 8(a)]. Dometic notified its customers by email of any price increases a month before they took effect and again one week before [24 ¶ 17]. As alleged, Gulf Stream never objected to these emails or confirmations from Dometic [*id.* ¶ 19, 21].

Gulf Stream sent checks to Dometic's bank lockbox [*id.* ¶ 23]. Gulf Stream included "remittance advice" on the checks to identify the invoices they paid and included other notes and markings [*id.* ¶ 23, 25; 11-8]. When a check arrived, the bank notified Dometic of the payment amount and the pertinent invoice [24 ¶ 25]. Dometic did not receive the actual check or any of the information from the remittance advice [*id.* ¶ 24].

In 2021, midstream in the business relationship, Dometic offered a rebate program to its customers through which they could receive discounts on their purchases [*id.* ¶ 13]. To qualify for the program's benefits, customers were required to provide forecasts to Dometic and sign its "Seller's OEM Terms and Conditions for 2021" [*id.*; 24-2]. Paragraph 9 of the OEM Agreement, titled "other terms and conditions of sale," stated that "[a]ll sales of Dometic Goods shall be made pursuant to Dometic's Standard Terms and Conditions of Sale" and explicitly incorporated those terms and conditions [24-2; 24 ¶ 15]. Gulf Stream signed the OEM Agreement on February 23, 2021 [24 ¶ 14; 24-2 at 1].

Over the course of their dealings, it was normal for Gulf Stream to have an outstanding balance with Dometic because of the high volume of orders and the various discounts, credits, and rebates [24 ¶ 26-27]. At some point in 2022, Dometic noticed that Gulf Stream's balance was steadily increasing [*id.* ¶ 33]. After reviewing Gulf Stream's payments from 2018 to 2023, Dometic identified more than 2,000 invoices that the company alleges Gulf Stream failed to pay in full, leaving an unpaid balance of more than $3 million [*id.* ¶ 9, 34; 24-6].

When Dometic raised this issue with Gulf Stream, Gulf Stream explained that the differences in payments related to delivery charges [24 ¶ 36]. By Dometic's calculations, this only accounted for 598 short-paid invoices, not the rest [*id.* ¶ 37-38; 24-6]. Dometic's investigation revealed additional ways Gulf Stream allegedly short-paid the invoices, including by basing its payments on lower prices of goods, paying 90 percent of an invoice, applying a chargeback, only paying a portion of the invoice, or not paying any portion of the invoice [24 ¶ 48-52].

Invoking diversity jurisdiction, Dometic sued Gulf Stream for breach of contract and other claims. Gulf Stream answered the complaint, filed a counterclaim for a declaratory

judgment, and moved for partial judgment on the pleadings. Dometic then filed an amended complaint, mooting Gulf Stream's original motion. Dometic's amended complaint asserted five counts: breach of contract (count 1); breach of Uniform Commercial Code (UCC) (count 2); with alternative claims of unjust enrichment (count 3), account stated (count 4), and prejudgment interest (count 5). Gulf Stream renewed a motion for partial judgment based on this amended pleading and targeted counts 1-3.

## STANDARD

After the pleadings are closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). Save for exceptions not pertinent here, the court is confined to matters addressed in the pleadings and must review allegations in the light most favorable to the nonmoving party. *See id.* The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

A Rule 12(c) "motion performs the same function as a Rule 12(b)(6) motion to dismiss—and the complaint must meet the Rule 12(b)(6) standard for the suit to survive." *Wolf v. Riverport Ins.*, 132 F.4th 515, 518 (7th Cir. 2025). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *accord Wolf*, 132 F.4th at 519.

DISCUSSION

A. *Choice of Law.*

Sitting in diversity, the court applies Indiana's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *E. Coast Entm't of Durham, LLC v. Hous. Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022). When there aren't any conflict of law issues or when the parties don't identify one worthy of analysis, the court applies the forum state's law. *See Tricor Auto. Grp. v. Dealer VSC Ltd.*, 219 N.E.3d 206, 216 n.7 (Ind. Ct. App. 2023); *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 963 (7th Cir. 2002). Dometic's amended complaint cites both Indiana's UCC and Illinois's UCC, but in briefing both parties apply Indiana law, so the court proceeds likewise.

B. *Breach of Contract (Counts 1 and 2).*

On the face of the amended complaint, Dometic alleges two counts for breach of contract. Both rest on the same 2,013 transactions for the sale of goods. Count 1 asserts that the parties entered into a series of contracts and that Gulf Stream defaulted and breached by not paying the purchase price after all conditions precedent to enforcement had been satisfied. Count 2 alleges that the parties entered into contracts for goods governed by the UCC, and that, after Gulf Stream accepted the goods, the company breached by refusing to pay Dometic the amounts owed.

Viewing these two counts as duplicative, Gulf Stream treats them as one claim for a breach of contract under the UCC. From there, Gulf Stream takes up arms for UCC's "battle of the forms." Specifically, Gulf Stream says, under § 2-207(1), the writings exchanged between the parties never formed a contract because Dometic's confirmations and invoices rejected Gulf Stream's price terms in its purchase orders, disagreed on essential terms, and made acceptance expressly conditioned on Gulf Stream's assent to Dometic's prices. *See* Ind. Code § 26-1-2-207.

Though the documents fell short of forming a contract, Gulf Stream says one nonetheless existed under § 2-207(3) because the parties performed anyway. Under this subsection, at least as Gulf Stream presents it, conflicting price terms get knocked out, leaving an open price term in the contract. Gulf Stream says § 2-305(4) fills this gap with the "reasonable value" of the goods at the time of delivery.[1] Under this framework, Gulf Stream says it is entitled to judgment on the contract claims because Dometic cannot show that Gulf Stream breached by not paying the prices in the confirmations and invoices. Gulf Stream adds that any claims stemming from unpaid delivery charges must also be dismissed because attachments to the pleadings prove that the delivery charges were prepaid.

Dometic attacks Gulf Stream's motion on multiple fronts. First, it says Gulf Stream fails to consider that all transactions subject to the OEM Agreement aren't subject to the battle of the forms analysis and that the agreement required Gulf Stream to pay Dometic's price of goods in effect at the time of shipment. Second, for all other transactions, Dometic contends that § 2-207(1)—not § 2-207(3)—governs because Gulf Stream knew its purchase orders listed outdated prices. Third, even assuming a contract could be formed under § 2-207(3), § 2-305(4) cannot fill the price gap because that subsection applies only when a contract has not been formed. Addressing Gulf Stream's point against delivery charges, Dometic argues that Gulf Stream cannot take a single exemplar of a confirmation order matching one purchase order and extrapolate that the parties agreed on terms of delivery in every other transaction. Either way, Dometic contends

[1] Gulf Stream also suggests that the purchase orders might too set the price under §§ 2-204(1) and 2-206. The court need not consider this issue when Gulf Stream has not developed the argument beyond a sentence, and given the analysis conducted today to resolve the motion. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) (courts are not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel").

that the claim cannot be dismissed because failing to pay for delivery was only one way in which Gulf Stream breached.

Sometimes the best of parties can get lost in the fog of battling forms. It can be easy to do as one of the harder areas of the UCC's Article II, and these parties argue it well. But, studying it through to the end, there is no need to run that analysis to resolve this motion. Gulf Stream narrowly construes the amended complaint as pleading a single contract claim based on a failure to pay invoiced amounts. From there, the company reasons that, if the contract required payment of some other amount, the claim must fail as a matter of law. This argument neglects to accommodate important differences between claims and theories and the full breadth of this amended complaint. *See, e.g., Signal Funding, LLC v. Sugar Felsenthal Grais & Helsinger LLP*, 136 F.4th 718, 724 (7th Cir. 2025).

A "claim" is the aggregate set of operative facts that creates an assertable right and entitles one to a remedy. *See id.*; *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 599 (7th Cir. 2011). A "theory" of relief is the "vehicle for pursuing the claim"—one "based on any type of legal source, whether a constitution, statute, precedent, or administrative law." *St. Augustine Sch.*, 78 F.4th at 352; *see, e.g., Roberts v. Smith & Wesson Brands, Inc.*, 98 F.4th 810, 815 (7th Cir. 2024). "One lawsuit may raise multiple claims, and each claim may be supported by multiple theories." *St. Augustine Sch.*, 78 F.4th at 352.

A "complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *accord Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); *Ryan v. Ill.*

*Dep't of Children & Family Servs.*, 185 F.3d 751, 764 (7th Cir. 1999) (plaintiff "cannot plead herself out of court by citing to the wrong legal theory or failing to cite any theory at all"). The court cannot grant a Rule 12(b)(6) or Rule 12(c) motion that "permit[s] piecemeal dismissals of *parts* of claims,"—that is, to dismiss but one legal theory that might not survive when another can sustain the claim. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (Rule 12(c)). The only question is "simply whether the complaint includes factual allegations that state a plausible claim for relief" under any legal theory. *Id.*; *see also Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021).

The core claim in this suit is that Gulf Stream failed to pay for product that Dometic supplied from 2018 to 2023, despite at times a signed agreement and at other times despite not having one. The legal theories structure the allegations from there—one based on a written master contract, one based on the statutory authority of § 2-207 without a signed contract, and, as the parties debate the theory today, one based on the alternative of either a gap filler or restitution through the operation of § 2-305. The theory to recover all invoiced amounts is but one theory of many. And these iterations of legal theories don't alter the fundamental reality that Dometic has stated a plausible claim for relief—namely, that Gulf Stream didn't pay for what it got. The court must deny this motion to dismiss accordingly.

Perhaps a little more explanation better illustrates the point. Suppose that Gulf Stream's battle-of-the-forms analysis is correct at every step—that, first, the exchange of purchase orders and confirmations failed to form a contract under § 2-207(1); that instead Dometic's and Gulf Stream's conduct established one under § 2-207(3); that the contract, or series of contracts over the various transactions, adopted only the terms on which their documents agreed (including that delivery charges were prepaid); that, by operation of the UCC, the contracts omitted the

conflicting price terms; and, last, that § 2-305(4) "fills the gap" of the missing price with the reasonable value of the goods at the time of their delivery.[2] Does any of this mean that Dometic lacks a plausible set of operative facts to support a claim? No, for the facts are all pleaded in the amended complaint; it is just that Gulf Stream cavils at the legal theory on which Dometic might recover—that, under a particular statute, the company gets one price and not another. Even if right, the court cannot grant a Rule 12(c) motion to dismiss just one theory among others.

Look at it another way. As alleged, Dometic delivered goods across 2,013 transactions, and Gulf Stream accepted these products, used them, and failed to pay the amounts owed [24 ¶ 8-9, 22, 68]. If Gulf Stream owes something for these goods, then Dometic has a UCC-based contract remedy (for either a reasonable price or reasonable value), *see* Ind. Code § 26-1-2-305, or one based in the alternative theory of unjust enrichment (a quasi-contract), *see Andrew Nemeth Props., LLC v. Panzica*, 271 N.E.3d 1100, 1115 (Ind. 2025), depending on their intent to form a contract. Even under Gulf Stream's view—for the company posits a contract in argument—the

[2] The court merely assumes Gulf Stream's argument for now. Though § 2-305 in other subsections could be said to gap fill an open price term, *see* Ind. Code §§ 26-1-2-305(1), (2); *see, e.g., Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 716 (7th Cir. 1987), it makes less sense to call that the function of § 2-305(4), for this provision assumes that no contract was ever formed, the parties having never intended to be bound unless the price was fixed or agreed. Without a contract, query whether there would be any gap to fill and whether, instead, § 2-305(4) ensures a remedy akin to restitution or quantum valebant—the reasonable value of goods furnished (distinguishing quantum meruit). *See also* White & Summers, *Uniform Commercial Code* § 4.14 (2020) ("Whether a court is to fill a gap under § 2-305 cannot even arise unless the court decides that the parties 'intended' a contract under the first sentence of that section.") (also characterizing subsections (1), (2), and (3) as addressing complete or partial price gaps, but not subsection (4)). Somewhat curiously, Gulf Stream seems to agree for its motion that a contract was formed but then never works within § 2-305(1), which applies when the parties intend to conclude a contract for sale though the price was not settled and which requires a reasonable price rather than the reasonable value of the goods; and both sides fall back instead to argue a section that presumes no contract was ever formed, seemingly contra their acknowledgement of a contract at the start. The court need not resolve this on the mere pleading, for often this is a question for a factual record or a factfinder after argument. *See* § 2-305 cmt. 2; *see also Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (party presentation rule); *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (same).

question of breach would become whether the company paid less than the reasonable value of these goods. Perhaps it did; perhaps it didn't. But at this stage, nothing in the pleadings permits the court to determine this as a matter of law, and all reasonable inferences must be taken in Dometic's favor. *Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). In short, because the pleaded facts state a plausible claim under a discernible legal theory in § 2-305, including for a contract formed with an open price term, the claim can proceed. *Bilek*, 8 F.4th at 587.

Other theories exist too. As alleged, for the order fulfillment process of exchanging purchase orders, confirmations, and invoices between April 1, 2021 and December 31, 2021, the two companies entered into an OEM Agreement [24-2].[3] It serves as another contract theory for controlling the price that Gulf Stream owed, at least for this period, if not also for any course of conduct argument that the parties might advance later. *See Ind. BMV v. Ash, Inc.*, 895 N.E.2d 359, 365 (Ind. Ct. App. 2008) ("An offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract.") (quotations and citations omitted). Gulf Stream reportedly received discounts on its purchases in exchange for its forecasts and assent to Dometic's standard terms and conditions for all such sales, which in turn fixed, as the cost of goods, Dometic's "published price" from the list in force on the date the company shipped product [24-1]. A master agreement can contemplate the completion of product type and quantity terms through separate purchase orders without that alone causing it to fail for indefiniteness. *See Conwell v. Gray Loon Outdoor Mktg. Grp.*, 906 N.E.2d 805, 813 (Ind. 2009) ("All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises

[3] Gulf Stream denies that this OEM agreement is valid and enforceable, but the court must accept Dometic's well-pleaded allegations as true. *Federated*, 983 F.3d at 312.

made, including by whom and to whom; absolute certainty in all terms is not required."). Under the amended complaint, such a master agreement plausibly binds the parties on price, at least for a time, without need to battle out the forms under § 2-207.

Suppose, then in the end, that Gulf Stream has its theory of the world right under § 2-207. The company still loses this motion. The court cannot dismiss theories under Rule 12(c)—these mere parts of a claim—not when the amended complaint plausibly alleges a claim under other contractual theories or authorities. *See Signal Funding*, 136 F.4th at 724; *BBL*, 809 F.3d at 325. So when Dometic argues that, even under Gulf Stream's scenario, there is a question of fact as to the price or reasonable value of the goods, its argument is perhaps stronger than it realizes at this stage. And when Dometic argues that it plausibly alleges a claim under the OEM Agreement, the court must agree that this too sustains the amended complaint. The battle of the forms will have to wait another day, perhaps summary judgment or trial.

One last note to make: the court also cannot dismiss other parts of Dometic's claim, such as the theory that Gulf Stream breached a contract by not paying delivery charges in certain transactions. For one, this is once more a mere portion of Dometic's contract claim, and alone would not require the dismissal of that claim under Rule 12(c). For another, Gulf Stream's argument rests on a single exemplar of a purchase order and confirmation, and the court will not presume that their details must be extrapolated to over 2,000 transactions in a six-year period, absent allegations that would settle the issue across their business relationship. For yet another reason, appreciating that this one purchase order and confirmation might appear to match under § 2-207(3)—the purchase order saying "pre-paid" for its freight term and the confirmation reciting "PPD" or, as a term of art, seller prepaid shipping—the court cannot conclude at this

early stage that a contract was formed in each transaction or that prepaid shipping had been bundled into the price (as often it is, subject to the intent of the parties), not when price has not been settled as an issue on the mere pleading.

Unlike summary judgment, when "the court can properly narrow the individual factual issues for trial by identifying the material disputes of fact that continue to exist," Rule 12(c) doesn't authorize piecemeal dismissal of Dometic's claims. *BBL*, 809 F.3d at 325. Accordingly, the court cannot grant Gulf Stream judgment on counts 1 and 2 under Rule 12(c).

C. *Unjust Enrichment (Count 3).*

In the alternative, Dometic asserts an unjust enrichment claim based on the operative idea that no contracts existed between the parties, at least for a time [24 ¶ 72-77]. Gulf Stream says Dometic can't maintain an unjust enrichment claim because all transactions were governed by contract. Dometic counters that the claim shouldn't be dismissed because the parties dispute whether a contract (or contracts) existed.

Unjust enrichment is a common law claim that permits recovery when "there is no contract, but [when] the circumstances are such that under the law of natural and immutable justice there should be a recovery as though there had been a promise." *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991) (citation omitted). After the pleading stage, proving an unjust enrichment claim requires a plaintiff to show that it "rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012).

"When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Zoeller v. E. Chi. Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (quotations and citation omitted). Accordingly, the existence of an express contract precludes an unjust enrichment theory because "(1) a contract provides a remedy at law; and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law." *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011); *see also Kohl's Ind., L.P. v. Owens*, 979 N.E.2d 159, 168 (Ind. Ct. App. 2012) (same).

Outside the OEM Agreement, plausibly for a portion of transactions in 2021, no one can say for sure whether Gulf Stream and Dometic formed a contract for each transaction from 2018 to 2023. The court cannot say a contract (or series of contracts) otherwise existed as a matter of law today either. The arguments on this motion leave this cloudy. For Gulf Stream's part, it wants badly to say a contract (or contracts) existed through § 2-207(3), but then it leans on § 2-305(4) to get its preferred price only to overlook that this presumes no such contract (or contracts) existed. For Dometic's part, it posits a contract, albeit an altogether different type, but then argues in the alternative that no contract was formed.

Contract formation under § 2-207(3) might still be stymied by the intent of the parties under § 2-305(4), for the latter provision outlines a scenario in which "there is no contract," not just that there is no term. Ind. Code § 26-1-2-305(4); *see also Quaker State Mushroom Co. v. Dominick's Finer Foods, Inc.*, 635 F. Supp. 1281, 1286 (N.D. Ill. 1986) (record generally supported contract formation under § 2-207(3), but court still found that no contract existed because there was no agreement between the parties on price). This isn't a situation where the parties agree to a contract to render any separate unjust enrichment claim unnecessary. A plausible reading of the amended

complaint is that, at one or more points, a contract was not formed. And of the arguments presented on this motion, only Dometic benefits from the ability to plead alternatively, even inconsistently. *See* Fed. R. Civ. P. 8(d)(2), (3); *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 584-85 (7th Cir. 2021). Based on the pleadings, the court denies the motion for judgment on count 3.

CONCLUSION

For these reasons, the court DENIES Gulf Stream's motion for judgment on the pleadings under Rule 12(c) [61].

SO ORDERED.

August 28, 2026

*s/ Damon R. Leichty*
Judge, United States District Court